RICHARD R. COEN, JR., Special Adm'r of Kyle R. Coen, Deceased, *et al.*, Plaintiffs, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY *et al.*, Defendants and Counterplaintiffs and Third–Party Plaintiffs-Appellants (Monica Forbes, f/k/a Monica Coen, Counterdefendant; Central Illinois Public Service Company *et al.*, Third–Party Defendants-Appellees).

Fourth District   No. 4—88—0585

Opinion filed March 17, 1989.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Allen E. Verchota, of counsel), for appellants.

Frederic L. Kenney, of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellee Coles-Moultrie Electric Cooperative.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (R. Gerald Barris and Della S. Nelson, of counsel), for appellee Central Illinois Public Service Company.

JUSTICE GREEN delivered the opinion of the court:

On May 30, 1985, plaintiffs Richard R. Coen, Jr., as special administrator of the estate of Kyle R. Coen, deceased, and Monica Coen brought suit against defendants Illinois Central Gulf Railroad Company (ICG) and R.D. Fletcher in the circuit court of Champaign County. Subsequently, defendants filed an amended third-party complaint against third-party defendants Central Illinois Public Service Company (CIPS) and Coles-Moultrie Electric Cooperative (Coop). On June 3, 1988, the court allowed CIPS' motion to dismiss defendants' third-party complaint against CIPS for failure to state a cause of action. The order provided that the dismissal was in bar of action as to the defendants' claim for contribution. On July 28, 1988, the court made a similar ruling, dismissing defendants' third-party complaint against Coop for failure to state a cause of action and declaring the dismissal to be in bar of action as to defendants' claim for contribution. On August 8, 1988, defendants filed a notice of appeal from the foregoing orders.

On August 23, 1988, Coop filed a document with the court requesting the court to clarify and amend its order of July 28, 1988, noting that the order contained no finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) which would make that order appealable. The order was final only as to the contribution claim of defendants against Coop but not final as to all other claims and parties in the case. On September 13, 1988, the circuit court entered a written order dismissing in bar of action count III of defendants' third-party complaint, which was directed solely against Coop. The order also made a finding pursuant to Supreme Court Rule 304(a). Defendants then filed a supplemental notice of appeal purporting to cover all of the circuit court orders dismissing defendants' claims against both Coop and CIPS. As the Rule 304(a) finding of the September 13, 1988, order made the dismissal of defendants' claim against Coop appealable, that appeal is before us. We affirm that order.

On October 12, 1988, CIPS moved in this court to dismiss defendants' purported appeal of the order dismissing their claims for contribution against CIPS. This court recognized that the order of June 3, 1988, lacked appealability absent a Rule 304(a) finding but, mistakenly, concluded that the September 13, 1988, finding pursuant to Rule 304(a) covered the June 3, 1988, order. Accordingly, this court ruled that the supplemental notice of appeal perfected the appeal against CIPS and denied the motion to dismiss. Defendants then sought a Rule 304(a) finding from the circuit court as to the June 3, 1988, order, but the circuit court concluded it had no jurisdiction because of our denial of the motion to dismiss the appeal and denied the request. Subsequently, we recognized our error and dismissed the appeal as to the order concerning CIPS. Apparently, no Rule 304(a) finding could be obtained and a new notice of appeal filed before scheduled oral arguments. Thus, although the case has been fully briefed on the merits by all parties, we are limited here to the appeal of the order of dismissal as to Coop.

Plaintiffs' complaint alleged Kyle R. Coen was killed, and Monica Coen injured, when an ICG train, running on its right-of-way and operated by Fletcher, collided at a highway crossing with an automobile driven by Monica Coen and in which Kyle R. Coen was riding as a passenger. Both defendants were charged with negligence. One of the grounds of negligence charged was that ICG had obscured the vision of Monica Coen at the crossing by failure to keep the right-of-way cleaned of bushes, shrubbery, trees, and weeds in violation of section 73 of the Illinois Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 77).

As pertinent here, count III of defendants' amended third-party complaint directed against Coop alleges that (1) CIPS had erected "for [Coop]" an electric transmission pole near ICG's right-of-way with a guy wire and anchor which extended upon ICG's right-of-way; (2) plaintiffs had alleged that a bush on that right-of-way had obstructed plaintiff Monica Coen's view of the ICG train as it approached the crossing at the time of the collision and was a proximate cause of the collision; (3) "the *presence* of the guy wire and the anchor on the railroad's right-of-way *was a cause of said bush*" (emphasis added); and (4) "having caused to be placed said guy wire anchor" on the right-of-way, Coop owed a duty to ICG and Fletcher "to exercise ordinary care to maintain the guy wire and anchor, which maintenance would include the cutting of any bush or foliage resulting from the presence of the anchor." Defendants then requested contribution from Coop in the event of defendants' liability to plaintiffs.

■ By the terms of section 2(a) of "An Act in relation to contribution among joint tortfeasors," a right to contribution arises when two or more persons are liable in tort to the same person for the same injury. (Ill. Rev. Stat. 1985, ch. 70, par. 302(a).) Thus, we are primarily concerned here not with the question of duty owed by Coop to defendants, but its duty to plaintiffs.

Both in its motion to dismiss and on appeal, Coop has contended it had no duty to cut any bush which was in the "presence" of the guy wire and anchor. It cites the decision of this court in *Esworthy v. Norfolk & Western Ry. Co.* (1988), 166 Ill. App. 3d 876, 520 N.E.2d 1044. That case concerned the duty of an owner or occupier of land near a railroad crossing in regard to obstructions to the view down the tracks which exist on the owner or occupier's land. This case concerns duty in regard to obstructions on the right-of-way of a railroad.

In contending Coop had a duty to remove the bush, defendants rely on *Peoria & Eastern Ry. Co. v. Kenworthy* (1972), 7 Ill. App. 3d 350, 287 N.E.2d 543 (person parking vehicle on right-of-way near crossing causing obstruction may be liable to indemnify railroad company found liable for crossing collision), *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 208 N.E.2d 573 (if contractor had left loose tie on right-of-way, contractor would have been required to indemnify railroad company for latter's liability to its employee injured by tie), and *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.* (1951), 343 Ill. App. 148, 98 N.E.2d 783 (party leaving truck too close to track required to indemnify railroad company for latter's liability to employee crushed between track and train). Those cases all differ from the instant case in that, there, the duty placed on parties to indemnify arose from acts of those parties in placing on the right-of-way the objects obstructing the view or coming into contact with the person injured.

Here, the alleged duty on Coop to cut the bush is stated to arise because Coop had the guy wire and anchor, which extended into the right-of-way, erected, and the "presence" of the wire and anchor was "a cause of said bush." A causal relationship between the existence of a guy wire and an anchor and the presence of a bush is not readily apparent. Defendants explain this relationship on the unalleged basis that the existence of the wire and anchor made the task of railroad employees in cutting the bush more difficult. An allegation that the wire and anchor made cutting more difficult would have created a more "plain and concise statement" of the cause of action which defendants sought to set forth. Ill. Rev. Stat. 1985, ch. 110, par. 2—603(a).

Citing the seminal case of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and subsequent cases such as *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260, and *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382, defendants maintain that contribution should be liberally allowed. However, those cases merely expand upon the circumstances whereby one tortfeasor can obtain contribution from another. Those cases do not expand upon the concepts which create tort liability, and they do not enlarge the scope of duty which gives rise to tort liability.

■ Citing the well-known cases of *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, and *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307, defendants point out that reasonable foreseeability of injury is a very important aspect of duty, and duty is an issue which must be determined as a matter of law by the court. We agree but note that in determining duty, in addition to considering foreseeability, the court must also consider (1) the likelihood of injury resulting from the conduct involved; (2) the magnitude of the burden of guarding against it; and (3) the consequences of placing the burden upon the party in question. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526, 513 N.E.2d 387, 396, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) However, we deem the question of duty here to turn mostly upon the factor of foreseeability. We must decide whether a crossing collision should reasonably have been seen by an entity alleged to have been in the position of Coop as a result of having a guy wire and anchor placed on the ICG right-of-way.

The allegations of the third-party complaint make clear that the bush, and not the wire and anchor, was the obstruction of which plaintiffs complain. Thus, the specific question which we must determine is whether Coop was required to foresee: (1) the wire and anchor would make the task of ICG in keeping the right-of-way clear substantially more difficult; (2) because of that difficulty, ICG would default in its statutory obligation to keep the crossing clear of obstruction; and (3) that failure would result in a collision at the crossing. We recognize some foreseeability of a collision arising from the conduct alleged to have been committed by Coop but deem the relationship between the conduct and the collision to be quite remote.

■ The parties have not presented us with any cases concerning the question of imposing tort liability for an injury on a party whose wrongful conduct makes more difficult the task of which another party has in discharging its duty to protect an innocent party. In addi-

tion to the remote nature of any foreseeability of injury, we would note here that the continued burden upon Coop of seeing that the right-of-way was being properly cleared around the wire and anchor would be very substantial, and a better policy would be to place sole responsibility upon the entity operating trains on the right-of-way.

■ Considering the lack of reasonable foreseeability of the collision arising from the placement of the wire and anchor, and the burden of placing a duty of maintaining that portion of the right-of-way on Coop, we hold that count III of the third-party complaint fails to allege a duty on Coop owed to plaintiffs which would give rise to a right of defendants for contribution.

We affirm the judgment of the circuit court in dismissing count III of the amended third-party complaint.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.