RICHARD NICHOLS, a Minor, by Linda Nichols, his Mother and Next Friend, Plaintiff-Appellant, v. CHESTER W. SITKO *et al.*, Defendants-Appellees and Counterdefendants-Appellees (Donna L. Sacks, Defendant and Counterplaintiff-Appellant).

First District (4th Division)   No. 86—1997

Opinion filed June 18, 1987.

Marks, Marks & Kaplan, of Chicago (Gilbert W. Gordon, of counsel), for appellant Richard Nichols.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant Donna L. Sacks.

Francis J. Leyhane III and Mark E. Condon, both of Condon, Cook & Roche, of Chicago, for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

While the plaintiff Richard Nichols was riding his minibike through the intersection of Bucky Lane and 85th Street in Willow Springs, Illinois, he was struck and injured by a car driven by the defendant, Donna Sacks. Sacks' visibility of Nichols was allegedly impaired by five-foot-tall weeds and foliage that were growing on a vacant lot located at the intersection. The lot was owned by the defendants Chester and Leona Sitko.

Nichols filed a two-count complaint against Sacks and the Sitkos. Count I alleged that Sacks was negligent in the operation of her vehicle. Count II alleged that the Sitkos were negligent in, among other things, failing to trim their weeds to a reasonable height in accordance with the Municipal Code of Willow Springs. Before this court on appeal is the dismissal of count II of Nichols' second amended complaint. Additionally, the defendant Sacks appeals the dismissal of her countercomplaint which sought contribution from the property owners, the Sitkos.

■ The essential elements of an action in negligence are the existence of a duty of reasonable care owed to the plaintiff by the defendant, breach of that duty and injury proximately resulting from that breach. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617; *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263.) As to the element of duty, Nichols argues that based upon the fact that the Sitkos knew or, in the exercise of ordinary care, should have known, that young children habitually frequented the vicinity of the empty lot, the Sitkos had a duty to protect

children from potential injury arising from the empty lot and the weeds growing thereon. In support of this argument, Nichols relies upon the case of *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. In *Kahn*, the court held that a possessor of land will be liable for injuries sustained to children when the injury is caused by a dangerous condition on the property and the owner knew or should have known that children habitually frequent the area.

■ It is clear from a reading of *Kahn*, however, that the principles enunciated therein are inapplicable to the facts at bar. *Kahn*, and the other cases cited by Nichols, involve liability for injuries that occurred on the land. In this case, Nichols was injured off the premises. As a general rule, a possessor of land is not liable for physical harm caused to others outside of the land by a natural condition of the land. (Restatement (Second) of Torts sec. 363(1) (1965); W. Prosser, Torts sec. 57, at 354-55 (4th ed. 1971), citing Goodhart, *Liability for Things Naturally on the Land*, 4 Camb. L.J. 13 (1930).) Further, the Illinois Supreme Court in *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177, has interpreted the *Kahn* decision as applying to cases where the child has gone onto the premises. As the court stated:

"The essence of the *Kahn* principle is to impose a duty upon those owning or occupying land to remedy conditions which, although considered harmless to adults, are dangerous to children who foreseeably wander onto the premises." 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180.

■ Additionally, the decision in *Kahn* requires that the injury occur as a result of a dangerous condition on the premises. A dangerous condition under *Kahn* and its progeny is one which causes an unreasonable risk of harm to children who, by reason of their immaturity, might be incapable of appreciating the risk involved. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; *Niemann v. Vermilion County Housing Authority* (1981), 101 Ill. App. 3d 735, 739, 428 N.E.2d 706.) The mere fact that a condition is capable of causing injury does not satisfy the requisites of *Kahn*. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177 (although injury resulted from a fall in a ditch, the ditch was not deemed to be dangerous).) Nevertheless, where the condition is in and of itself innocuous, it may become dangerous when combined with other conditions. (*Novak v. C. M. S. Builders & Developers* (1980), 83 Ill. App. 3d 761, 764, 404 N.E.2d 918.) In such a case, the plaintiff's complaint must sufficiently set forth allegations that factually establish that an innocuous condition or agency has combined with some other surrounding

or circumstance which then renders it dangerous to children. From this, the trial court must be able to conclude that the condition complained of created a greater risk to the child than the child would generally encounter. *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Prince v. Wolf* (1981), 93 Ill. App. 3d 505, 509, 417 N.E.2d 679.

■ In this case, Nichols' complaint does not set forth any facts tending to show that some other condition was present to interact with the weeds so as to create a condition that could be characterized as dangerous. Even assuming that the obstruction of traffic alleged by Nichols was present, we do not believe that this is a condition that creates a risk to a child which is not normally encountered. Consequently, Nichols has not stated a cause of action for relief under the principles of *Kahn*.

Nichols suggests, however, that the principles in *Kahn* should be extended to cases where the injury occurred off the premises. In support of this argument, Nichols cites the case of *Mahurin v. Lockhart* (1979), 71 Ill. App. 3d 691, 390 N.E.2d 523. Nichols suggests that *Mahurin* stands for the proposition that a landowner can be liable for damages resulting from any dangerous natural condition on his property even if the actual occurrence took place off the property. We do not agree with this expansive interpretation of *Mahurin*.

The condition which caused the injury in *Mahurin* was a dead branch which fell from a tree located on the defendant's premises onto the adjacent property. The historical rule which is set forth in the Restatement of Torts provides that a possessor of land in an urban area will be liable to persons using a public highway for harm resulting from his failure to use reasonable care to prevent an unreasonable risk of harm rising from the condition of trees on the land. (Restatement (Second) of Torts sec. 363(2) (1965); see generally McCleary, *The Possessor's Responsibilities as to Trees*, 29 Mo. L. Rev. 159 (1964).) In *Mahurin*, the court recognized the changes in modern society which have occurred since the time the Restatement rule was adopted, and therefore extended the rule as to liability for trees to apply not only to persons on a public highway, but also to those on adjoining property. Notwithstanding this extension, there is nothing in the *Mahurin* opinion to suggest that the decision should apply to other natural conditions such as overgrown weeds. Nor has the opinion been interpreted in that manner. See generally *Torts/Premises Liability*, 68 Ill. B.J. 676 (1980).

More importantly we believe that, as distinguished from overgrown weeds, the injury caused by trees occurs as a result of some

actual physical intrusion by the unsound tree; whereas in a case such as this, we are dealing with an alleged visual obstruction. This visual obstruction is no different from obstructions which are caused by houses and buildings encountered routinely in daily life. For these reasons, we do not believe this case to be an appropriate one in which to extend the rules regarding trees or the principles of *Kahn*. Moreover, even the broad ruling of *Mahurin* suggested by Nichols, whereby a landowner would be liable for any dangerous natural condition on the premises which injures a person off the premises, would require a showing by Nichols that the existence of weeds should be characterized as dangerous. As stated above, Nichols has failed to sustain this burden.

■ Additionally, Nichols relies upon the case of *Cummings v. Jackson* (1978), 57 Ill. App. 3d 68, 372 N.E.2d 1127, as support for the allegation that the village of Willow Springs' nuisance ordinance created a specific duty upon the Sitkos. The ordinance referred to in *Cummings*, however, was never set forth or discussed in that opinion; consequently, the case provides little, if any, aid to evaluate the ordinance in the instant case. Nevertheless, as a general rule, when an ordinance or statute is intended to protect human life or property and the plaintiff is within the class intended to be protected, a violation of the ordinance or statute which proximately causes the plaintiff's loss is *prima facie* evidence of negligence. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93; *DiOrio v. City of Chicago* (1981), 99 Ill. App. 3d 1047, 1051, 425 N.E.2d 1223; see generally W. Prosser, Torts sec. 36 (4th ed. 1971).) Where the duty imposed is plainly for the benefit only of the public at large, a violation of the rule is of no evidential value upon the question of negligence. 57 Am. Jur. 2d *Negligence* sec. 256, at 640 (1971).

■ The Willow Springs ordinance that Nichols attempts to impose liability under essentially provides that the growth of weeds in excess of six inches in height is to be considered a public nuisance. Applying the above-stated principles to this ordinance, it is our view that the ordinance cannot properly be interpreted either generally, as a public safety measure intended to protect human life or property of a particular class of individuals, or specifically, as a measure to protect Nichols from the type of harm he suffered. Rather, the caption of the Willow Springs ordinance defines the provision as a "Public Nuisance" ordinance, implying an intent to benefit the interests of the municipality at large, instead of a particular class. The ordinance is similar to those statutes seeking to secure the enjoyment of rights to which individuals are entitled as members of the public, such as ordi-

nances relating to the public right of an unobstructed passage on a public highway or freedom from excessive noise. (Restatement (Second) of Torts sec. 288, comment *b*, illustration 1, at 30 (1965); W. Prosser, Torts sec. 36, at 192-93 (4th ed. 1971).) As a result, we do not believe Nichols can rely upon the Willow Springs ordinance to impose liability upon the Sitkos.

For the foregoing reasons, the decision of the trial court striking and dismissing count II of Nichols' complaint is affirmed. Additionally, in light of this decision, that there was no duty on the part of the Sitkos to remedy the condition on the premises, the dismissal of the defendant Sacks' countercomplaint against the Sitkos is also affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.